THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN D. RYAN
    *Plaintiff*,

    v.

TEV CORPORATION, *et al.*,
    *Defendants*.

Civil Action No. ELH-18-cv-3852

## MEMORANDUM OPINION

In this family feud, plaintiff Kevin Ryan filed suit against defendants TEV Corporation ("TEV") and his father, T. Anthony Ryan, the sole officer and director of TEV, alleging fraud and conversion. ECF 1 (the "Complaint").[1] Plaintiff, one of TEV's four shareholders, claims that Mr. Ryan diverted dividends to himself that were owed to plaintiff, and purposely concealed his conduct by conveying false and misleading information to plaintiff and the Internal Revenue Service ("IRS") with respect to TEV's finances. *Id.*

The Complaint contains three counts lodged under Maryland law. Count I, lodged against Mr. Ryan, sets forth a claim for constructive fraud. ECF 1, ¶¶ 24-30. In Count II, plaintiff asserts a conversion claim against Mr. Ryan. *Id.* ¶¶ 31-37. Count III, raised against both defendants, seeks an "accounting of TEV's assets and finances." *Id.* ¶ 44. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332. *Id.* ¶¶ 4, 6.

Defendants have filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction (ECF 15), supported by a memorandum of law. ECF 15-1 (collectively, the

---

[1] The Complaint refers to T. Anthony Ryan as "Mr. Ryan." To avoid confusing father and son, I shall refer to Kevin Ryan as "plaintiff" or "Kevin."

"Motion"). Plaintiff opposes the Motion (ECF 16, "Opposition"), supported by the affidavit of Kevin. ECF 16-1. Defendants have replied. ECF 19.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual Background

Plaintiff is a citizen of Maryland. ECF 1, ¶ 1. Mr. Ryan is a citizen of Florida. *Id.* ¶ 3. TEV was incorporated under the laws of the state of Rhode Island, but it wound up operations in 2017. *Id.* ¶¶ 2, 12. On April 17, 2018, the Secretary of State of Rhode Island revoked TEV's "Certificate of Incorporation/Authority to transact business in Rhode Island" due to its failure to maintain a registered office in the state. *Id.* ¶ 13.

TEV's "business operations were limited to owning and leasing certain real property . . . ." *Id.* ¶ 14. TEV, a closely-held corporation, had four shareholders: Mr. Ryan; plaintiff; and plaintiff's siblings, Shane T. Ryan and Christopher A. Ryan. *Id.* ¶¶ 8, 10, 11. Mr. Ryan owned 19.879 percent of the total outstanding shares of TEV. *Id.* ¶ 8. Plaintiff and his siblings held the remaining shares, each owning 26.707 percent of TEV. *Id.* ¶ 10. Plaintiff alleges that TEV was required by its "governing documents" to make annual "distributions to shareholders of profits it earned from its real property (the "Annual Distributions")." *Id.* ¶ 14. And, TEV was required "to account properly for the same in IRS tax filings." *Id.*

As noted, Mr. Ryan served as TEV's sole officer and director. *Id.* ¶ 8. In that capacity, Mr. Ryan owed fiduciary duties to TEV and its shareholders. *Id.* ¶ 9. However, according to plaintiff, TEV, "acting through Mr. Ryan, failed to make complete and accurate Annual Distributions to Plaintiff[.]" *Id.* ¶ 17. Instead, Mr. Ryan "caused TEV to disburse funds to himself, which he used for his personal benefit[.]" *Id.* ¶ 19 (emphasis in original). Further, Mr. Ryan took

steps to "conceal from [plaintiff] the actual Annual Distributions owed to him." *Id.* ¶ 18. He withheld from plaintiff "complete and accurate information regarding [the Annual Distributions], including, but not limited to, accurate tax information." *Id.* ¶ 17. And, according to plaintiff, Mr. Ryan "deliberately provided false and misleading information regarding TEV's finances" to plaintiff and the IRS. *Id.* ¶ 18.

On February 26, 2018, plaintiff demanded that defendants produce authenticated copies of TEV's governing documents, financial statements, income tax returns, and all records related to the Annual Distributions made between 2012 and 2018. *Id.* ¶ 21. However, defendants refused to furnish the requested information. *Id.* ¶ 22. According to plaintiff, his Annual Distributions "for all years prior to 2016 remain unpaid" and "unaccounted for." *Id.* ¶ 23.

Additional facts are included, *infra*.

## II. Standard of Review

Defendants' Motion for lack of personal jurisdiction is predicated on Fed. R. Civ. P. 12(b)(2). ECF 15. "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Grayson*, 816 F.3d at 267.

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. In its discretion, a court may also permit discovery as to the jurisdictional issue. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). However, neither discovery nor an

evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2). *See*

*generally* 4A WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 (4d ed. 2019).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case

and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268. "When personal

jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting

jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV*

*Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *see Grayson*, 816 F.3d at 268. In that

circumstance, "the district court must determine whether the facts proffered by the party asserting

jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party

challenging jurisdiction." *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v.*

*Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst*

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, "[u]nlike under Rule 12(b)(6),

the court may also consider affidavits submitted by both parties, although it must resolve all factual

disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*,

935 F.3d at 226; *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009);

*Grayson*, 816 F.3d at 268; *Mylan Labs.*, 2 F.3d at 62.

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not

finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a

preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *Wellington Fin.*

*Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

### III.    Discussion

Fed. R. Civ. P. 4(k)(1) permits a federal district court to exercise personal jurisdiction over

a defendant in accordance with the law of the state in which the district court is located. *Carefirst*,

334 F.3d at 396. Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*; *accord Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, GLR-16-2974, 2017 WL 2778825, at *4 (D. Md. June 26, 2017).

### A. Maryland's Long-Arm Statute

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2017 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F2d 649 (4th Cir. 1985); *accord Mylan Labs.*, 2 F.3d at 61.

Defendants argue that plaintiff cannot satisfy the requirements of Maryland's long-arm statute because defendants have neither contracted to supply goods or services in the State nor do

they hold real property in Maryland. ECF 15-1 at 6. In response, plaintiff argues that jurisdiction is proper under either §§ 6-103(b)(1) or (b)(3) because the claims alleged in the Complaint "arise from Defendants transacting business or causing tortious injury in the state." ECF 16 at 5.

Jurisdiction cannot rest on C.J. § 6-103(b)(1). Plaintiff does not assert that defendants performed any "work or service" in Maryland. Nor can it be said, based on the allegations and evidence, that defendants "transact[ed] business . . . in the State." C.J. § 6-103(b)(1). Defendants have no presence in Maryland: they have no offices or agents in the forum, have not solicited business from Maryland residents, and do not advertise or sell services or products in the State.

Plaintiff's reliance on C.J. § 6-103(b)(3) is likewise unavailing. This subsection applies only where both the tortious act *and* the injury occurred in Maryland. *See Geelhoed v. Jensen*, 277 Md. 220, 224 n.3., 352 A.2d 818, 820 n.3 (1976) (distinguishing between §§ 6-103(b)(3) and (b)(4)); *see also Cleaning Auth., Inc. v. Neubert,* 739 F. Supp. 2d 807, 813 (D. Md. 2010); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006); *Zinz v. Evans and Mitchell Indus*., 22 Md. App. 126, 324 A.2d 140 (1974), *cert. denied*, 272 Md. 751 (1974).

However, defendants' conduct arguably satisfies C.J. § 6-103(b)(4). Plaintiff alleges that TEV and Mr. Ryan defrauded him and that he suffered the harms of defendants' tortious conduct in Maryland, where he resides. ECF 1, ¶¶ 1, 30, 37. What constitutes a "persistent course of conduct" in Maryland is not entirely clear. *See Geelhoed*, 277 Md. at 226-27, 352 A.2d at 822 (describing "persistent course of conduct" as having "a relatively flexible quality," and instructing that the term should be construed as "coextensive with the requirements of due process"). But, defendants sent materials to plaintiff's residence in Maryland. ECF 16-1, ¶ 7. And, defendants allegedly "interacted with Maryland tax authorities," including the submission of false tax information to Maryland tax authorities and the appearance of TEV's accountant, electronically,

before a Maryland State court in 2017 to address "a tax dispute related to [plaintiff's] Annual Distributions[.]" *Id.* ¶¶ 4-6.

Maryland courts have "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution[.]" *Beyond Sys, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (the long-arm statute authorizes the exercise of personal jurisdiction "'to the full extend allowable under the Due Process Clause'" (citation omitted)); *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *Pinner v. Pinner*, 240 Md. App. 90, 104, 201 A.3d 26, 34 (2019). Consequently, although the long-arm and constitutional due process requirements are distinct, they can be evaluated in tandem. *See Beyond Sys*, 388 Md. at 15, 878 A.2d at 576 ("[O]ur statutory inquiry merges with our constitutional examination."); *accord Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."). Therefore, I shall proceed to consider whether the exercise of personal jurisdiction over defendants comports due process.

## B. Constitutional Due Process

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Courts have separated this test into individual "prongs," first ascertaining whether the threshold of

"minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Nonetheless, the "constitutional touchstone" of personal jurisdiction is that "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Due process jurisprudence "recognize[s] two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, ___ U.S. ___, ___, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919). However, "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (*Goodyear*, 564 U.S. at 924).

In contrast, specific jurisdiction exists where the "the suit arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler AG*, 571 U.S. at 127 (citation omitted) (alterations in original). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb.*, 137 S. Ct. at 1780 (alterations

in original) (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers Squibb.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919).

Here, plaintiff does not assert that either TEV or Mr. Ryan are subject to general personal jurisdiction in Maryland. Therefore, I shall consider only whether defendants are subject to specific personal jurisdiction in Maryland.

The Fourth Circuit has formulated a three-part test for courts to use in determining whether there is specific jurisdiction over a defendant. The three prongs are: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan*, 293 F.3d at 712); *accord Sneha Media & Entm't*, 911 F.3d at 198; *Perdue Foods, LLC v. BRF, S.A.*, 814 F.3d 185, 188 (4th Cir. 2016); *Carefirst*, 334 F.3d at 397.

Notably, specific jurisdiction is assessed on a claim-by-claim basis. *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 678 (M.D.N.C. 2011) ("When specific jurisdiction is asserted, jurisdiction must be established for each claim alleged."); *Gatekeeper, Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 666-68 (E.D. Va. 2010) (interrogating the doctrinal basis for this rule); WRIGHT & MILLER, § 1069.7 ("[A] plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").[2]

---

[2] To my knowledge, this rule has not been adopted by the Fourth Circuit. But, those circuits that have addressed the issue appear to be in accord. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006); *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999).

The first prong "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted). A defendant purposefully avails himself of a forum "where the defendant deliberately has engaged in significant activities within the state." *Id.* at 475-76. In such a case, "[i]t is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id.* at 475.

Frequently, the minimum contacts inquiry looks to the defendants' "'continuing relationships and obligations with citizens of [the forum state].'" *Id.* at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). For example, the Supreme Court has upheld the assertion of jurisdiction over defendants who had entered contractual relationships with residents in the forum, *Burger King*, 471 U.S. at 479-480, or who circulated magazines in the forum, thereby "deliberately exploit[ing]" a market in the forum state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984). The Fourth Circuit has identified a list of facts that courts should consider when determining whether a defendant has conducted business in the forum. *Sneha Media & Entm't*, 91 F.3d at 199. They are, *id.*:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

(Quoting *Consulting Eng'rs*, 561 F.3d at 278). The Court has cautioned that these factors are "nonexclusive" and "not susceptible of mechanical application." *Consulting Eng'rs*, 561 F.3d at 278.

However, and of relevance here, purposeful availment may exist—even in the absence of substantial presence in the forum—where the defendant intentionally targets the forum and those acts have harmful effects in the forum state. *See Calder v. Jones*, 465 U.S. 783 (1984); *Consulting Eng'rs*, 561 F.3d at 280; *Carefirst*, 334 F.3d at 398 n.7; *see Plaint Aid*, 2017 WL 2778825 at *7-9. This approach to purposeful availment is traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).

In *Calder*, the plaintiff, an actress who lived in California, filed a libel suit in a California court against a Florida reporter and his Florida-based editor and newspaper, the National Enquirer. 465 U.S. at 784-86. The Supreme Court found personal jurisdiction on the basis that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789. The defendants knew the article would "have a potentially devastating impact" on the plaintiff and that the "brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works[.]" *Id.* at 790. And, the defendants had contacts with California separate and apart from the plaintiff's injury: The allegedly libelous article relied on sources based in California, the article concerned the plaintiff's activities in the state, and California was the National Enquirer's largest market. *Id.* at 789-90. As a result, "California is the focal point both of the story and of the harm suffered." *Id.* at 789. Thus, the Court said that "jurisdiction over [the defendants] in California is proper because of their intentional conduct in Florida calculated to cause injury to [the plaintiff] in California." *Id.* at 791.

The Supreme Court clarified *Calder* in the case of *Walden v. Fiore*, 571 U.S. 277 (2014), and further expounded on the purposeful availment requirement. There, Nevada citizens sued a Georgia law enforcement officer in Nevada, asserting that he violated their constitutional rights when he seized $ 97,0000 in cash that the plaintiffs were carrying through the Atlanta airport en route from Puerto Rico to Las Vegas. *Id.* at 279-81. The defendant moved to dismiss the suit, arguing that the federal courts in the District of Nevada lacked personal jurisdiction.

The Supreme Court agreed. The Court began by describing the kinds of contacts that can create specific jurisdiction. It explained that "[the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. In other words, the relationship between the forum and the defendant "must arise out of contacts that the 'defendant *himself*'" creates with the forum State." *Id.* at 284 (emphasis in *Walden*) (quoting *Burger King*, 471 at 475). Consequently, while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. Put simply, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Further, the Court stated: "These same principles apply when intentional torts are involved. In that context, it is likewise insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* (citation omitted). "The proper focus," the Court opined, "is 'the relationship among the defendant, the forum, and the litigation.'" *Id.* at 291 (quoting *Calder*, 465 U.S. at 788).

Applying these principles to *Calder*, the Court stressed the defendants' intentional contacts with the forum. As the Court explained, "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* at 287. That was because "[t]he reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Id.* at 288.

Turning to the case before it, the Court held that the officer "formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289. The officer "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* Rather, he merely knew of the travelers' ties to Nevada, and they felt their financial loss there. But, as the Court explained, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. Instead, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* When viewed through that lens, the "claimed injury d[id] not evince a connection between [the defendant] and Nevada." *Id.* Indeed, the Court observed that the plaintiffs "would have experienced this same lack of access [to the seized funds] in California, Mississippi, or wherever else they might have traveled[.]" *Id.*

The Fourth Circuit has characterized *Calder* as establishing the "'effects test' of specific jurisdiction[.]" *Carefirst*, 334 F.3d at 398 n.7. Under that test, the plaintiff must establish that: "'(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.'" *Consulting Eng'rs*, 561 F.3d at 280 (quoting *Carefirst*, 334 F.3d

at 398 n.7).[3]  Notably, the effects test "informs" rather than "supplant[s]" the minimum contacts analysis.  *Consulting Eng'rs*, 561 F.3d at 280.

Significantly, it is not just any contact that will give rise to specific personal jurisdiction.  "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'"  *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (alterations omitted) (quoting *Goodyear*, 564 U.S. at 919).  Put slightly differently, "the plaintiff's claim must 'arise out of or relate to' the defendant's forum conduct."  *Bristol-Myers Squibb*, 137 S. Ct. at 1786 (quoting *Helicopteros*, 466 U.S. at 414).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

---

[3] Other circuits have similarly synthesized *Calder* into a tripartite test.  *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1072 (10th Cir. 2008); *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007); *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 803 (9th Cir. 2004). However, the courts of appeal appear to describe the first prong with differing levels of generality, begging the question whether *Calder* applies only where the defendant's conduct qualifies as an intentional tort under state law, or whether it covers any sort of intentional act that has a harmful effect in the forum.  *Compare Johnson v.* Arden, 614 F.3d 785, 790 (8th Cir. 2010) (the effects test applies where the "defendant's acts (1) were intentional"); *Dudnikov*, 514 F.3d at 1063 (describing *Calder* as requiring "(a) an intentional action"); 374 F.3d at 803 (the effects test applies where the defendant "committed an intentional act"), *with Louis Vuitton*, 736 F.3d at 1356 (the effects test is satisfied "when the tort . . . '[was] intentional'" (citation omitted)); *Carefirst*, 34 F.3d at 398 n.7 (the effects test applies where the defendant shows "that (1) the defendant committed an intentional tort"); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1988) (summarizing the *Calder* test as requiring the plaintiff to show "(1) the defendant committed an intentional tort").

I need not examine the appropriate reach of *Calder* because the Complaint asserts a count of conversion.  And, that is an intentional tort under Maryland law.  *Nickens v. Mount Vernon Realty Grp., LLC*, 429 Md. 53, 77, 54 A.3d 742 (2012) ("Conversion is an intentional tort[.]").

Determining whether the plaintiff's claims share a nexus to the defendant's contacts with the forum "is generally not complicated." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber C*o., 682 F.3d 292, 303 (4th Cir. 2012) (citation omitted), *cert. denied*, 568 U.S. 1087 (2013). The Fourth Circuit has stated: "Where activity in the forum state is 'the genesis of the dispute,' this prong is easily satisfied." *Id.* (quoting *See CFA Inst. v. Inst. of Chartered Fin. Analysis of Ind.*, 551 F.3d, 285 295 (4th Cir. 2009)). Similarly, a plaintiff's claim will "arise" out of the defendant's activities in the forum state where "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Tire Eng'g & Distrib.*, 682 F.3d at 303 (citing *CFA Inst.*, 551 F.3d at 295-96).

Finally, the third prong's constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. "This prong of the analysis 'ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent.'" *Tire Eng'g & Distrib.*, 682 F.3d at 301 (citation omitted).

"The factors relevant to such an analysis include 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1786 (quoting *Burger King*, 471 U.S. at 477).

Defendants contend that the exercise of jurisdiction flouts due process. They assert that plaintiff "does not, because he cannot, offer any facts indicating that Defendants purposefully availed themselves of the privilege of conducting activities in this State." ECF 18 at 2. According

to defendants, the transmission of allegedly false information to plaintiff in Maryland does not support jurisdiction because "it incorrectly focus[es] on Plaintiff's residence in Maryland, rather than the Defendants' activities in Maryland." ECF 15-1 at 6. In their view, "but for the fact that Plaintiff chose to live in [Maryland], thereby causing Defendant TEV to send shareholder information to Plaintiff in this State, there would be no contact whatsoever between Defendants and the State." ECF 18 at 2. Further, they aver that the "Complaint fails to set forth any facts that would establish a nexus between the alleged tortious conduct of Defendants and the State of Maryland" because "[t]here is no allegation in the Complaint from which to infer that [the allegedly tortious] corporate decisions were made any place other than Rhode Island, where TEV was incorporated and maintains its principal place of business." *Id.* at 5.

Plaintiff counters that the Complaint adequately alleges facts sufficient to exercise specific personal jurisdiction over defendants in Maryland. Regarding the purposeful availment prong, plaintiff argues, ECF 16 at 7:

> Their tortious acts, as alleged in the Complaint, were to injure Plaintiff in Maryland, where he resided at all relevant times. *See* [ECF No. 1] at 3, ¶ 15. Furthermore, the Annual Distributions that TEV was obligated to make to Plaintiff (and which Mr. Ryan converted) were to be made to Plaintiff in Maryland. *See id.* Similarly, Defendants directed the false and fraudulent information regarding the Annual Distributions to Plaintiff, in Maryland, where they knew Plaintiff would rely upon the same. *See id.* at 4, ¶¶ 17-19. In addition, the Complaint alleges that Defendants provided false information to the IRS regarding Plaintiff's tax liabilities, which, potentially, would injure him in Maryland, where he resides. *See id.* at 4, ¶¶ 18-19.

Further, plaintiff avers that, "in furtherance of their tortious scheme," defendants transmitted false tax information "to the Maryland state tax authorities as well as the IRS." *Id.* at 8 (emphasis in original); *see* ECF 16-1, ¶ 4 ("I have personal knowledge that TEV and Mr. Ryan have interreacted with Maryland tax authorities . . . ."); *id.* ¶ 5 (stating that "in or around 2017, TEV and Mr. Ryan caused TEV's accountant . . . to appear electronically before an administrative

law judge in Maryland in order to address and attempt to resolve a tax dispute related to the Annual Distributions owed to me and the Maryland state tax consequences of the same"). As to the nexus prong, plaintiff asserts that it is "self-evidently satisfied" because "all of the contacts alleged in the Complaint were taken specifically in connection with Defendants' obligations to Plaintiff, and in furtherance of Mr. Ryan's conversion and fraudulent conduct, also directed to Plaintiff." *Id.* at 8.

I am satisfied that plaintiff has made a *prima facie* showing that defendants purposefully availed themselves of the Maryland forum. To be sure, defendants' connection to Maryland looks weak at first glance. No allegations or evidence exist to support finding that defendants conducted business in Maryland such that they should have reasonably anticipated being haled into court in the State. Plaintiff does not assert that TEV has offices, property, employees, or agents in the State. Nor does plaintiff allege that Mr. Ryan ever solicited business from Maryland residents either in-person or electronically. And, there are no allegations or evidence that defendants engaged in any long-term business activities in the State.

Moreover, the transmission of allegedly fraudulent financial statements to plaintiff is not, by itself, they type of meaningful contact that can give support jurisdiction. For one thing, "[g]enerally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process." *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996); *accord Estate of Morris v. Goodwin*, DKC-13-3383, 2015 WL 132617 at *6 (D. Md. Jan. 8, 2015); *Pharmabiodevice Consulting, LLC v. Evans*, GJH-14-00732, 2014 WL 3741692 at *8 (D. Md. July 28, 2014). And, more fundamentally, this correspondence relates to Maryland only because plaintiff happens to reside here. The *Walden* Court expressly rejected giving weight to these kinds of contacts,

reasoning that it would "impermissibly allow[] a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis." 571 U.S. at 289 (emphasis added).

However, a closer inspection of defendants' conduct reveals that all three elements of *Calder*'s effects test are sufficiently satisfied for the purposes of a Rule 12(b)(2) motion to dismiss. First, plaintiff alleges that defendants are liable for constructive fraud and conversion. Specifically, plaintiff claims that Mr. Ryan "surreptitiously distribut[ed] TEV's funds and assets to himself rather than paying them to Plaintiff as duly-owed Annual Distributions." ECF 1, ¶ 27. To cover his tracks, Mr. Ryan "deliberately provided false and misleading information regarding TEV's finances" to plaintiff and to the IRS. *Id.* ¶ 28. This is intentionally tortious conduct.[4] See *Nickens v. Mount Vernon Realty Grp., LLC*, 429 Md. 53, 77, 54 A.3d 742 (2012) ("Conversion is an intentional tort[.]"). Therefore, plaintiff has satisfied the first prong of the *Calder* test.

Second, plaintiff alleges that he "felt the brunt of the harm in the forum." *Consulting Eng'rs*, 561 F.3d at 280. Plaintiff resides in Maryland. ECF 1, ¶ 1. Thus, to the extent that he was deprived of Annual Distributions, he was financially injured in the State. And, the attendant consequences of defendants' misrepresentations to the IRS and Maryland regarding plaintiff's tax liability would be felt acutely in the State. *See* ECF 16-1, ¶ 5. Indeed, it appears that in 2017, a Maryland State court heard "a tax dispute related to the Annual Distributions[.]" *Id.*

Third, plaintiff sufficiently alleges that defendants "expressly aimed [their] tortious conduct at the forum[.]" *Consulting Eng'rs*, 561 F.3d at 280. Based on the allegations and evidence, defendants filed inaccurate financial statements not only with the IRS, "but also with the

---

[4] To be sure, constructive fraud, the basis of Count I, is not an intentional tort as a matter of Maryland law. *See Canaj, Inc. v. Baker & Division Phase III, LLC*, 391 Md. 374, 422, 893 A.3d 1067, 1095 (2006) (distinguishing between the *scienter* requirements of actual fraud and constructive fraud). However, it is not lost on the Court that the conduct alleged in the Complaint smacks of deception, not negligent misrepresentations.

Maryland state tax authorities." ECF 16-1, ¶ 6. Moreover, TEV and Mr. Ryan allegedly participated in a proceeding before a State administrative law judge in 2017, "in order to address and attempt to resolve a tax dispute related to the Annual Distributions owed to me and the Maryland state tax consequences of the same." *Id.* ¶ 5. These are not "random, fortuitous, or attenuated" contacts. *Burger King*, 471 U.S. at 475. Defendants intentionally availed themselves of the machinery of the State of Maryland to further their alleged fraud scheme.

Thus, accepting these allegations as true, as the Court must at this preliminary stage, *Hawkins*, 935 F.3d at 226, plaintiff has sufficiently demonstrated that defendants expressly aimed their conduct at Maryland, such that Maryland can be said to be the "focal point" of defendants' alleged tortious activity. *Calder*, 571 U.S. at 287. Accordingly, at this preliminary stage, plaintiff has made a *prima facie* showing that defendants purposefully availed themselves of Maryland.

Indeed, defendants' contention that they "have nothing to do with Maryland" blinks reality. This case is a far cry from *Walden*, where the defendant did, in fact, lack jurisdictionally relevant contacts with the forum. 571 U.S. at 289. There, the allegedly tortious conduct occurred in Georgia, after which the parties never interacted. *Id.* at 290. And, although the injury may have been experienced in Nevada, that was "not because anything independently occurred there, but because Nevada is where [the plaintiffs] chose to be at a time when they desired to use the funds seized by petitioner." *Id.* In contrast, part of the allegedly tortious conduct in this case occurred in Maryland. Specifically, defendants conveyed false information to State tax authorities in order to conceal from plaintiff that conversion of his Annual Distributions. This "conduct connects [defendants] to [Maryland] in a meaningful way." *Id.* at 290.

Having concluded that plaintiff has satisfied all three factors of the *Calder*'s effects test, I turn to consider whether plaintiff's claims "'arise out of or relate to'" defendants' contacts with

Maryland. *Bristol-Myers Squibb*, 137 S. Ct. at 1786. In doing so, I am mindful that plaintiff must establish specific jurisdiction for each claim asserted. *See Pan-Am. Prod. & Holdings*, 825 F. Supp. 2d at 678 (M.D.N.C. 2011).

Plaintiff's claim for constructive fraud directly arises from defendants' contacts with the forum. Defendants misled plaintiff as to TEV's finances not only by sending him false statements but also by filing inaccurate tax forms with Maryland tax authorities.

In contrast, the nexus between the conversion claim and defendants' Maryland contacts is not air tight. Under Maryland law, conversion is "'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Sage Title Grp., LLC v. Roman*, 455 Md. 188, 203, 166 A.3d 1026, 1034 (2017) (quoting *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560, 731 A.2d 957, 963 (1999)). Thus, given that Mr. Ryan resides in Florida and TEV is located in Rhode Island, the alleged wrongful exercise and control of plaintiff's Annual Distributions did not occur in Maryland. But, the alleged conversion does "'relate[] to'" defendants' Maryland contacts. *Bristol-Myers Squibb*, 137 S. Ct. at 1786. That is because, according to plaintiff, defendants were only able to convert plaintiff's Annual Distribution year after year by misleading plaintiff, the IRS, and Maryland tax authorities as to TEV's profits. In sum, plaintiff has satisfied the second requirement for the exercise of specific personal jurisdiction for both the constructive fraud and the conversion claim.

Finally, I conclude that requiring defendants to answer plaintiff's suit in Maryland is reasonable. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Defendants have put forth no case, much less a "compelling" one, that the exercise of jurisdiction

would "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (citation omitted). Accordingly, the exercise of specific jurisdiction over defendants complies with federal due process requirements.

## IV.    Conclusion

Plaintiff has made a prima facie showing of specific personal jurisdiction over defendants in Maryland. Therefore, I shall DENY the Motion (ECF 15).

An Order follows.


Date: November 1, 2019                    _____/s/_____
                                          Ellen L. Hollander
                                          United States District Judge